# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SONDRA HELENESE | : | |
| Plaintiff | : | |
| | : | |
| v. | : | 3:09-cv-351 (CFD) |
| | : | |
| ORACLE CORPORATION AND | : | |
| HYPERION SOLUTIONS CORP., | : | |
| Defendants | : | |

## RULING ON MOTION TO DISMISS AND COMPEL ARBITRATION

This is an employment discrimination and retaliation action arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. §§ 2000e *et seq.* and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60, *et seq.* The plaintiff Sondra Helenese ("Helenese"), an African-American woman, was hired by defendant Hyperion Solutions Corporation ("Hyperion"), which was subsequently acquired by defendant Oracle Corporation ("Oracle"). The defendants have moved to dismiss and compel arbitration, pursuant to the Federal Arbitration Act ("FAA"). The defendants assert that the plaintiff is bound by three alleged agreements to arbitrate: (1) the arbitration policy contained in the Employee Handbook; (2) an online course and test administered to the plaintiff two years after she was hired, and (3) Hyperion's Sales Incentive Compensation Plan (the "Bonus Plan"), in which Helenese participated from July 1, 2005 to June 30, 2006 and which contains an arbitration provision. Because Helenese's disputes arose after the expiration of the only binding arbitration agreement she entered into with her employer (the Bonus Plan arbitration agreement), the motion to dismiss and to compel arbitration is denied.

I.    **Background**[1]

Helenese is a black, African-American woman who accepted work in a sales position at Hyperion by signing an offer letter dated July 16, 2003.  The offer letter specified that Hyperion was an "at will" employer, meaning that either Hyperion or Helenese could terminate the employment relationship at any time, with or without cause and with or without notice.  The offer letter provided that "[t]he terms and conditions contained in this offer letter supersede any other representations made to you, whether oral or written, and cannot be changed without the express written approval of the President of the Company in a document entitled "Change to Offer of Employment."  The letter contained no arbitration provision.

Hyperion's "Employment-At-Will and Arbitration of Disputes Policy," dated August 1, 2004, is contained in the Employee Handbook.  Helenese asserts that she was not provided a copy of the Employee Handbook when she was hired.  However, she did take an online course and test around November, 2005 at the request of her employer.  The defendants assert that this course and test contained information and questions regarding the arbitration policy, but Helenese does not recall reviewing or answering any questions about the arbitration policy.

While in her initial sales position at Hyperion, Helenese participated in Hyperion's Sales Incentive Compensation Plan (the "Bonus Plan"), which had an effective date of July 1, 2005 to June 30, 2006 and which included an arbitration provision which provided in relevant part that:

> In the event of any dispute or claim relating to or arising out of Participant's participation in the Plan, Participant's employment relationship with Hyperion, this

---

[1]The facts herein are taken from the complaint and from the parties' submissions relating to the motion to dismiss and compel arbitration, and are undisputed unless otherwise noted.  The Court assumes the parties' familiarity with the facts asserted by each party and includes here only those facts relevant to the ruling on the motion to compel arbitration.

Plan, Participant's Goal Sheet, or the termination of Participant's employment with Hyperion, for any reason (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, race, national origin, disability or other discrimination or harassment), Participant and Hyperion agree that all such disputes will be fully, finally and exclusively resolved by binding arbitration to the fullest extent permitted by law.

The Bonus Plan also provided that "[t]his Plan shall terminate at the end of the Term unless expressly extended by Hyperion by written notice to the Participant." The Bonus Plan was not extended. Instead, Helenese was promoted in December, 2005 to the position of Renewal Manager, in which she was no longer a "Participant" in the Bonus Plan, nor was she eligible for a bonus under the Bonus Plan. Instead, the new position carried a 50% salary increase over Helenese's prior base salary, and Helenese was eligible for a 15% bonus. Helenese's claims of discrimination and retaliatory termination all relate to the period after her change in position to Renewal Manager. Helenese was ultimately terminated on December 6, 2006.


## II.    Legal Standards

The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal policy favoring arbitration agreements." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983); see also Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 162 (2d Cir. 1998). However, despite the FAA's strong policy in favor of rigorously enforcing arbitration

agreements, arbitration "is a matter of consent, not coercion," <u>JLM Inds. v. Stolt-Neilsen, SA</u>, 387 F.3d 163, 171 (2d Cir. 2004) (internal quotation omitted), and "[a]ccordingly, federal law does not require parties to arbitrate when they have not agreed to do so." <u>Collins & Aikman Prods. Co. v. Building Sys., Inc.</u>, 58 F.3d 16, 19 (2d Cir. 1995).

The issue of whether a particular dispute is subject to an arbitration agreement is one for the Court. <u>JLM Inds.</u>, 387 F.3d at 171. "In determining whether to compel arbitration pursuant to the FAA, a court looks to four factors: 1) whether the parties agreed to arbitrate their dispute; 2) whether the asserted claims fall within the scope of the arbitration agreement; 3) whether Congress intended the federal statutory claims asserted by the plaintiff, if any, to be non-arbitrable, and 4) if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the remaining claims pending arbitration." <u>Capone v. Elec. Boat Corp.</u>, No. 3:06-cv-1249 (JCH), 2007 WL 1520112 at *2 (D. Conn. May 18, 2007) (citing <u>Morales v. Rent-A-Center, Inc.</u>, 306 F.Supp.2d 175, 179 (D. Conn. 2003)). Once it is determined that a valid arbitration agreement exists, the policy in favor of rigorously enforcing arbitration agreements directs the Court to construe that agreement broadly. "[A]ny doubts concerning the scope of arbitrable claims should be resolved in favor of arbitration." <u>Nunez v. Citibank, N.A.</u>, No. 08cv5398, 2009 WL 256107 at *3 (S.D.N.Y. Feb. 3, 2009) (citing <u>Moses H. Cone Memorial Hosp.</u>, 460 U.S. at 24-5). "Arbitration is properly compelled unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." <u>Id.</u> (quoting <u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1361 (2d Cir. 1993)) (internal quotation marks omitted). One example of this extremely broad construction to be accorded to arbitration agreements occurs in the context of expired agreements to arbitrate.

-4-

The Supreme Court has articulated a presumption in favor of post-expiration arbitration of matters and disputes "arising out of the relation governed by the contract." CPR (USA), Inc. v. Spray, 187 F.3d 245, 255 (2d Cir. 1999) (quoting Litton Financial Printing v. NLRB, 501 U.S. 190, 204 (1991)).

> The Litton Court explained that post-expiration grievances arise under the contract, and are therefore arbitrable: (1) when the dispute "involves facts and occurrences that arose before expiration;" (2) when post-expiration action "infringes a right that accrued or vested under the agreement;" or (3) when "under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement."

Id. (quoting Litton, 501 U.S. at 206). "The Litton Court specifically instructed lower courts faced with post-expiration disputes to determine whether the parties had agreed to arbitrate these disputes . . . i.e., to determine arbitrability." Id. (citing Litton, 501 U.S. at 208-09).

"Typically, the party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." Capone, 2007 WL 1520112 at *2 (quoting Tellium, Inc. v. Corning Inc., 2004 WL 307238 at *5 (S.D.N.Y. Feb. 13, 2004)) (internal quotation marks omitted). In the context of a motion to compel arbitration, the Court applies a standard similar to the standard for a motion for summary judgment. Comfort v. Mariner Health Care, Inc., No. 3:04cv2142 (JCH), 2005 WL 977062 (D. Conn. Apr. 26, 2005) (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Id. "To decide whether a valid arbitration agreement exists, the court looks to the 'ordinary state-law principles that govern the formation of contracts' under the law of the state governing the contract." Id. at *3 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The parties in

this case appear to agree that Connecticut law governs, at least as to the first two purported

arbitration agreements.  Although the Bonus Plan contains a choice-of-law provision stating that

California law governs the plan's performance and construction, the general principles of

contract formation at issue here are essentially the same in both states.

Under Connecticut law, an enforceable contract requires "that the parties' minds had truly

met . . .  If there has been a misunderstanding between the parties, or a misapprehension by one

or both so that their minds have never met, no contract has been entered into by them."  Gibbs v.

Conn. Gen. Life Ins., No. CV97 0567009, 1998 WL 123010 at *2 (Conn. Super. Ct. Mar. 3,

1998) (quoting Fortier v. Newington Group, Inc., 30 Conn.App. 505, 510 (1993), cert. denied,

225 Conn. 922 (1993)).  Compare, e.g., Oper. Engs. Pension Trust v. Gilliam, 737 F.2d 1501,

1504 (9th Cir. 1984) (discussing "meeting of the minds" requirement for contract formation and

holding that the surrounding circumstances and the intentions of the parties are relevant to

determining if a binding agreement exists).  For a promise to be enforceable against the promisor,

the promisee must have given consideration for the promise, defined as "a benefit to the party

promising, or a loss or detriment to the party to whom the promise is made."  Id. (quoting

Gianetti v. Norwalk Hosp., 211 Conn. 51, 61 (1989).  Generally-applicable contract defenses,

such as fraud, duress or unconscionability, may invalidate arbitration agreements without

contravening the purposes of the FAA.  Morales, 306 F.Supp.2d at 181 (citing Doctor's Assocs.

v. Casarotto, 517 U.S. 681, 687 (1996)).


III.    **Discussion**

The defendants' first asserted ground for compelling arbitration is the purported existence

of an agreement to arbitrate in the Employee Handbook.  However, there is no evidence that the Employee Handbook constituted a "contract" between Helenese and Hyperion, or that reading or complying with the policies in the Employee Handbook were ever made conditions of employment with Hyperion.  Accordingly, no "meeting of the minds" occurred as to any arbitration policy contained in the Employee Handbook, and the Court will not compel arbitration on that basis.

Next, the defendants argue that Helenese's taking the online course and passing the accompanying test constitutes her agreement to the arbitration policy referenced therein; however, Helenese disputes that she ever saw such a reference to an arbitration policy when taking the course or answering the questions.  Accordingly, there is a question of fact as to whether a "meeting of the minds" ever occurred as a result of the online course – one which might be resolvable, if a finder of fact were presented with evidence such as internal records proving that Helenese did answer a specific question or questions about the arbitration policy correctly.  However, this question of fact is immaterial to the issue of whether the parties thereby entered into an agreement to arbitrate, because such a course could not create a binding contract between the parties in light of the terms dictated by the July 15, 2003 offer letter.  Even assuming that the online course did make reference to an arbitration policy, and that Helenese did indicate her understanding of that policy by answering questions about the arbitration policy as part of the online test, Helenese's employment was initiated and governed by the terms contained in her offer letter, which specifically stated that the letter's terms and conditions (which did not include an arbitration provision) "cannot be changed without the express written approval of the President of the Company in a document entitled 'Change to Offer of Employment.' "  An

-7-

employee or employer entering into an agreement to submit all claims to arbitration gives up significant rights, materially changing the terms of employment.  Like any original offer or proposed modification to an offer, the offer of employment newly subjected to an arbitration provision must be accepted in order to create a binding contract.  Gibbs, 1998 WL 123010 at *2 (citing Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1 (1995)).  Accordingly, the mere existence of an online course and test, without an accompanying document explicitly changing the offer of employment in the manner specified by the offer letter (or at least in a manner as clear and unequivocal as that letter) is not a new contract, because it is not an offer or an acceptance of new employment terms sufficient to supersede the employment agreement memorialized in the offer letter.  Additionally, Helenese's continued employment alone would not have been enough to constitute assent to a new contract term even if she had notice of the provision.  Under Connecticut law, where an employer issues a new contract term that "substantially interferes with an employee's legitimate expectations about the terms of employment . . . the employee's continued work after notice of those terms cannot be taken as conclusive evidence of the employee's consent to those terms."  Torosyan, 234 Conn. at 18.  Accordingly, the Court can not compel arbitration on the basis of the online course and test.

Furthermore, the purported agreement to arbitrate lacks consideration.  While several decisions from the U.S. District Court for the District of Connecticut have determined that consideration was sufficient in circumstances where an at-will employee remained employed, see Comfort, 2005 WL 977062 at *2; Fahim v. Cigna Invs, Inc., 1998 WL 1967944 at *2 (D. Conn. 1998); Capone, 2007 WL 1520112 at *6, those cases are limited to their particular facts.  Consideration requires "a benefit to the party promising, or a loss or detriment to the party to

-8-

whom the promise is made." Finlay v. Swirsky, 103 Conn. 624, 631 (1925).  As a result, an employer's "specific promise to continue to employ an at-will employee may provide valid consideration for an employee's promise to forego certain rights." Gibbs, 1998 WL 123010 at *3 (Conn. Super. March 3, 1998), quoting Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1125, 1131-32 (7th Cir. 1997).  Where, as here, "an employer has made no specific promise, the mere fact of continued employment does not constitute consideration for the employee's promise." Id., quoting Gibson, 121 F.3d at 1131-32.  Since the defendants in this case did not make a specific promise to continue employing Helenese in exchange for agreeing to the arbitration provision, or provide another benefit or suffer a detriment, the policy lacks consideration.

Finally, the defendants argue that the arbitration provision in the Bonus Plan compels arbitration in this case.  Unlike the Employee Handbook and the online course and test, the Bonus Plan's arbitration provision and Helenese's acceptance of the plan (by virtue of remaining employed by Hyperion pursuant to that plan) are clear and undisputed.  Although there is a clear indication in the text of the Bonus Plan itself that the Bonus Plan would expire unless renewed, and it is undisputed that the Bonus Plan's compensation terms did not apply to Helenese once she was promoted to a new position carrying its own compensation terms, there is no indication as to whether the parties intended their arbitration duties under the Bonus Plan to terminate automatically with the termination of the Bonus Plan.  Accordingly, the Court must determine whether the plaintiff's claims, which arose after the Bonus Plan no longer applied to the terms and conditions under which Helenese was evaluated and compensated, are arbitrable.  CPR (USA), Inc., 187 F.3d at 255 (citing Litton, 501 U.S. at 208-09).

The arbitration provision in the Bonus Plan explicitly covered Helenese's "employment relationship with Hyperion," as well as " the termination of Participant's employment with Hyperion, for any reason (including, but not limited to, any claims of . . . race, national origin, . . . or other discrimination or harassment)."  However, the Bonus Plan, by its own terms, had a limited life span and was no longer effective as to Helenese after her promotion in December 2005.  The defendants argue that the plan's arbitration agreement nevertheless survives in light of its broad language and the "liberal federal policy favoring arbitration" which requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir. 2008) (internal citation omitted).  However, the scope of this arbitration provision is clear; what is not clear is whether the arbitration provision remained an operative agreement between the parties after December 2005, or whether it expired at that time along with the rest of the Bonus Plan.

The Court considers the post-expiration viability of an arbitration agreement in light of the Supreme Court's decision in Litton, 501 U.S. at 205, and finds that the arbitration provision in the Bonus Plan does not fit into any of the Litton circumstances in which post-expiration grievances nevertheless "arise under the contract." Id.  First, the dispute does not involve facts and occurrences arising before the Bonus Plan's termination; on the contrary, all of Helenese's grievances relate to alleged discrimination and retaliation occurring during her employment as a Renewal Manager who was not subject to the Bonus Plan, and her grievances have nothing whatsoever to do with any contractual rights arising under, vested, or accrued under the Bonus Plan.  Second, the defendants' attempt to recast the substantive rights in dispute – from Helenese's right not to be discriminated or retaliated against on the basis of race, to the

defendants' right to arbitrate – is of no avail.  The right to arbitrate is *now* asserted by the

defendants as a procedural defense to the plaintiff's chosen forum for litigation of grievances that

have nothing to do with the contract, and that arose only after the contract was no longer in

effect.  It is not the substantive right that gave rise to the cause of action in this case.  Compare

Litton, 501 U.S. at 206.  Neither the Litton decision nor the Supreme Court's prior decision in

Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430

U.S. 243 (1977), held that an arbitration provision in an expired contract should be transformed

into an "accrued" or "vested" right under a contract whose primary purpose had nothing to do

with the right or duty to arbitrate disputes.  Accordingly, none of the circumstances articulated in

Litton bring this dispute within the class of disputes that "arise under the contract" containing the

arbitration agreement.

   Moreover, it is only under the special, broad interpretation of the *scope* of valid

arbitration agreements that a presumption in favor of arbitrability applies - normal principles of

contract interpretation apply to determine whether a valid arbitration agreement exists.  In the

context of an existing at-will employment agreement governed by an offer letter that did not

include an agreement to arbitrate, and that required that any changes to the agreement be effected

in a specific manner, it cannot reasonably be said that both the parties expected the arbitration

provision included as a collateral term in the expired Bonus Plan to extend into conduct occuring

over the course of the year following the expiration of the plan and culminating with Helenese's

termination approximately one year after the Bonus Plan last governed her employment

relationship with the defendants.  Even if the defendants intended that the arbitration provision

survived the Bonus Plan's expiration, there was no "meeting of the minds" sufficient to form a

binding agreement to arbitrate any and all future claims relating to Helenese's employment.[2]

Accordingly, the Court can not compel arbitration based on the arbitration provision in the Bonus

Plan.

**IV.      Conclusion**

For the foregoing reasons, the Motion to Dismiss and Compel Arbitration [Dkt. #10 ] is

DENIED.

So ordered this <u>19th</u> day of February, 2010 at Hartford, Connecticut.

 /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[2]The defendants have presented no evidence suggesting that the Renewal Manager promotion was implemented pursuant to any written contract which also contained an arbitration provision; nor has Helenese presented evidence that any such written contract existed but did not contain an arbitration provision.